## UNITED STATES ex rel. HALL v. RAGEN, Warden.

### No. 44 C 349.

District Court, N. D. Illinois, E. D.

March 23, 1945.

Paul E. Thurlow, of Chicago, Ill., for relator.

George F. Barrett, Atty. Gen., for respondent.

SHAW, District Judge.

The petitioner in this case is a prisoner in the Illinois State Penitentiary at Joliet, Illinois, and by leave of Court has brought this suit in forma pauperis. The Court appointed Paul Thurlow of the Chicago Bar as amicus curiæ, and Mr. Albert A. Warner of the Central Howard Association of

Chicago voluntarily associated himself with Mr. Thurlow in representing the petitioner.

The petitioner contends that he was denied due process of law in the Circuit Court of Macon County, Illinois, wherein he was convicted of robbery unarmed in connection with purse-snatching and was sentenced to an indeterminate term of imprisonment of one to twenty years in the Illinois State Penitentiary. He has exhausted his remedies in the Courts of Illinois and comes to this Court claiming the protection of the 14th Amendment.

■ He complains of a number of matters in connection with his trial which are not open for consideration in this Court because they could only be inquired of by writ of error and he is limited in this case to the sole question of whether or not he has been denied due process of law in connection with his conviction. On this point it is his contention that, in practical effect, he was denied the benefit of counsel on his trial and nothing more can be considered by me.

In his petition petitioner alleges that his attorney was engaged in numerous altercations with the Trial Court and the Assistant State's Attorney which necessarily prejudiced him in the minds and presence of the jury; that during the course of the trial the Judge called his attorney and the Assistant State's Attorney into his chambers and told the petitioner's attorney that it would be useless for him to proceed further with the case, and that thereupon petitioner's attorney left the Court; that the trial proceeded without him and he was convicted; that he was not represented by any counsel in the subsequent proceedings which would involve making a motion for a new trial and arrest of judgment. It appears from the petition that this case was taken to the Supreme Court of Illinois on writ of error and the judgment was there affirmed on motion. That Court could have taken no other action because there had never been any motion for a new trial in the Trial Court.

In Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461, 146 A.L.R. 357, the Supreme Court of the United States says:

"A judge of the United States—to whom a petition for habeas corpus is addressed—should be alert to examine 'the facts for himself when if true as alleged they make the trial absolutely void.'"

Pursuant to this admonition from our highest court I have ordered the writ to issue in this case and proceeded to examine the facts for myself to determine if they are true as alleged, because I am convinced that if they are true the trial was absolutely void.

■ I am aware of the holding of the United States Supreme Court in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L. Ed. 1595, in which it is held that the due process required by the 14th Amendment does not incorporate, as such, the specific guarantees found in the 6th Amendment that are binding on Federal Courts as decided in Johnson v. Zerbst, supra. Nevertheless, it is a requirement of due process under the constitution of Illinois that an accused criminal shall be given the benefit of counsel, and it is clearly apparent from the decision in Betts v. Brady, supra, that had such a requirement been present in the laws of Maryland the decision in that case would have been necessarily different. It is to be noted that the opinion in the Betts v. Brady case reveals at some length the substances of the provisions of the constitutions of the original thirteen states and gives controlling weight to those provisions as they existed at the time of the adoption of the 14th Amendment. Indeed, the United States Supreme Court in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, and many other cases has frequently stated that the right to counsel in a criminal proceeding is fundamental. I take it that as a fundamental right it is guaranteed in the Federal Courts by the 6th Amendment and in the State Courts by the 14th. On this theory of the case the question necessarily comes to a Federal Court for examination and decision under the Federal Constitution, and to decide this question we must review the facts as apparent on this hearing.

■ On the hearing in this case the petitioner testified in his own behalf but produced no other evidence beyond his own testimony and his sworn petition. It was proved and the Court could take judicial notice of the fact that other witnesses for the petitioner would have had to be brought from Decatur, Illinois, approximately 200 miles from Chicago where this hearing was held, and without funds such witnesses could not be produced. Neither were there any funds available for stenographic and other charges necessary for

taking depositions. The Assistant State's Attorney who tried the defendant in the Circuit Court of Macon County was present in Court and testified, as will appear from the record. The Trial Judge who tried the defendant was also present in Court, as will appear from the record, but did not testify. After the Assistant State's Attorney had testified the Court announced from the bench that he took notice of the presence of the Honorable Charles Y. Miller, Judge of the Circuit Court of Macon County, Illinois, and asked the Assistant Attorney General, representing the respondent, if he cared to produce him as a witness. The Attorney General made no reply. The Attorney General did not call him as a witness and the Court announced that in view of the presence of the Trial Judge in Court this Court would assume as true the statements of the sworn petition unless they were further explained by the Trial Judge, and announced a recess to give the Attorney General time to decide whether or not he should call him. The hearing was later resumed and the Trial Judge did not testify. I, therefore, assume that the testimony of the petitioner and the statements of the sworn petition are true as alleged except and to the extent that they may have been specifically controverted by the Assistant State's Attorney, as will be noted.

The only thing approaching a controversy as to the facts arises from the testimony of Fred G. Leach, who had been the Assistant State's Attorney who tried this case, and that was in a very slight and somewhat immaterial degree. His testimony may as well be considered as corroborative as contradictory to that of the petitioner. So far as the transactions in open court are concerned, his testimony is entirely corroborative of the testimony of the petitioner. He testified that in the Judge's chambers the Judge explained to Mr. Buxton that he was sustaining objections to the questions and that he felt to continue with that argument would prejudice the defendant.

The petition in this case with its supplements and amendments is of considerable length and by reason of its inexpert preparation is somewhat confusing. It was prepared by the petitioner himself, for the most part printed in ink rather than being written or typewritten, and has required considerable care to try and sort out the material from the immaterial—the competent from the incompetent and the relevant from the irrelevant. The best that I have been able to do with it is to draw certain conclusions of fact from the entire petition, the numerous exhibits and the testimony taken in open court.

My conclusions from all of these sources may be summarized. The petitioner Hall was charged with unarmed robbery by indictment of the Circuit Court of Macon County, Illinois, because of a purse-snatching incident involving himself and another defendant and was duly indicted and convicted on this charge. When he was arraigned for trial, being without funds, an attorney was appointed for him but never interviewed him or took any part in the subsequent proceedings. Thereafter the petitioner's mother employed one T. C. Buxton, a doctor who was at that time licensed to practice law but who has since been disbarred, to represent the petitioner at the trial. There is no report of proceedings at that trial nor any stenographic report of the evidence, so I have little to go by as to what actually happened. However, it is clear and I do find that at the conclusion of the case for the State a witness for the defendant was called to the stand but never was permitted to testify. The Attorney Buxton repeatedly asked incompetent questions to which objections were repeatedly sustained and the matter degenerated into a violent argument between Buxton, the Assistant State's Attorney and the Court. The petitioner testified, and the Trial Judge did not deny, that the Judge got mad and pounded the bench and thereupon called Buxton and the Assistant State's Attorney into his chambers. When they came out of chambers, Attorney Buxton told the petitioner that he could do no further good by going on with the trial and that the Judge had told him in chambers that he might as well not attempt to do anything more for his client. The Assistant State's Attorney testified that all the Judge did in chambers was to explain to Buxton his reasons for sustaining objections, and it is again to be noted that the Trial Judge sat in my courtroom while this case was being tried by me and was not called upon to testify although it was suggested that he do so. At any rate, the witness left the stand without giving any testimony and neither the defendant himself nor another witness whom he then had present in Court were called. Each of the attorneys made some remarks to the

jury, the jury retired and Buxton left the Court.

There is a conflict in the testimony between the Assistant State's Attorney, who tried the case, and the petitioner as to whether or not the Attorney Buxton was in Court when the verdict was rendered, but if he was in Court he did nothing for the petitioner, because there was never any motion for a new trial made. This is another point which could have been settled by the Trial Judge had he seen fit to do so. About ten days after this verdict was returned and without any motion for a new trial being made, nor any motion in arrest of judgment entered, and clearly and definitely without the presence of any attorney for the petitioner, the sentence and judgment here in question were entered of record, the mittimus issued and the prisoner taken to the penitentiary where he has remained for the last two years.

The Assistant State's Attorney who tried this case testified in this Court that one of the reasons for halt of the trial and going into the Judge's chambers was because he and the Judge felt that Buxton was prejudicing the defendant in the presence of the jury.

A few days after this trial and on behalf of the Macon County Bar Association, the Assistant State's Attorney who had tried the case prepared and filed an information in the Circuit Court of Macon County seeking to disbar and suspend the Attorney Buxton from practice in the Circuit Court of Macon County, because of Buxton's alleged subornation of perjury in another case tried about that time and partly because of his demonstrated incompetence in the trial of this petitioner. In that petition it was alleged and afterwards found by the Circuit Court who tried this case that Buxton was not capable of protecting the rights of litigants in any Court, either civil or criminal, or of practicing law before any Court and suspended him from practice. His name was afterwards, on his own motion, stricken from the roll of attorneys by the Supreme Court of Illinois, so he is no longer an attorney of the Bar of this State.

 It would have been possible in this case with available funds to have given this Court a much clearer picture of what actually happened in this trial and it would have been much more satisfactory to the Court if the Attorney General had seen fit to call the Trial Judge to the witness stand while he was sitting in Court. It is difficult to get an actual picture of what actually happened in the courtroom during this trial from what has been presented, but the petitioner presented a long list of witnesses whom he wished called and who could not be called because of their distance from Chicago and the lack of money to advance their mileage and witness fees at approximately $25 each, or even to take their depositions at considerable stenographic charge. The Attorney General could have brought in this evidence, and to some degree I think myself justified in drawing unfavorable inferences from his failure to do so. Clearly there is enough before the Court to justify the inferences I have drawn and it is certain that the people of the State of Illinois possess the resources to have given a more complete picture of the matter had they seen fit to do so. There is in the record a copy of a petition sent to the Parole Board of Illinois, asking release of this prisoner, a statement that he did not have a fair trial which is signed by 53 residents of Decatur and the first signer was foreman of the jury who tried the case. I recognize the principle that a juror cannot impeach his own verdict and yet something must have happened in that courtroom which impelled such an unusual action. To a certain degree it is corroborative of the inferences I have drawn.

It is my conclusion as a matter of law that this man was not convicted by due process of law within the meaning or spirit of the 14th Amendment. It has been repeatedly held in the Supreme Court of Illinois and the Supreme Court of the United States, and I believe is universally the rule, that it is as much the duty of the State's Attorney and the Trial Judge to protect the rights of the defendant on trial as it is the duty of the State's Attorney to secure a conviction. It is clear beyond question from this record that this man was not defended by an attorney but only by a doctor who through some accident held a license to practice law and who was shortly thereafter disbarred. When it became apparent to the prosecuting attorney, as he testified in this Court, that the interests of the defendant were being prejudiced by the ignorant mouthings and unintelligent and belligerent attitude of this doctor-lawyer it was his duty to ask for a mistrial, and due process of law required that he should not have permitted the farce

to go farther. The same duty devolved upon the Trial Judge in even a higher degree. It is not due process to permit a defendant ignorant of law to be misrepresented and prejudiced by the ignorance and misconduct of someone pretending to represent him. Neither was it within the limits of due process to permit this trial to proceed to a verdict and to a final judgment without counsel representing the defendant.

■ The right to counsel does not apply to any particular moment during a trial but during the entire trial, and there is no point in a trial at which a defendant is more in need of expert guidance than after verdict. Necessary technicalities have to be met if defendant's rights are to be preserved, as is clearly demonstrated in this case. No defendant unskilled in law would know how to make a motion for a new trial nor even know of the necessity for a motion for a new trial nor the reasons for those necessities. No layman would understand that unless a trial judge is given the opportunity to correct his own errors by a motion for a new trial there is nothing of which he can thereafter complain in a court of review so far as the proceedings at the trial were concerned. No one not a lawyer would realize that without a duly certified and filed report of proceedings at a trial there would be nothing upon which the Supreme Court of Illinois could act in attempting to review those proceedings. In short, when this man was abandoned by his attorney or according to his version the attorney was ordered out of the case, he was finished so far as any appellate review in Illinois was concerned and unless the Trial Judge saw fit to order a new trial of his own motion, which was not done, no other court in the State could do anything for him by way of reviewing the proceedings up to that point.

This petitioner has exhausted his State remedies through application to State Courts for habeas corpus, including an application to the Supreme Court of Illinois, upon which certiorari has been denied by the Supreme Court of the United States. 323 U.S. ——, 65 S.Ct. 435. So far as the record before me shows, no Court has heretofore reviewed the facts presented in this Court. In fact, on the very day this opinion is being written the Supreme Court of Illinois has, for the first time by bench announcement, made public its long settled policy of never taking a habeas corpus

case if it involved inquiry into questions of fact. This new announcement will make clear to many lawyers and many other courts the reasons why so many of the petitions for habeas corpus have been denied by that Court without opinion.

It is my conclusion that this petitioner was not convicted by due process of law as guaranteed by the 14th Amendment of the United States Constitution; he will therefore be discharged.

Petitioner discharged.