**UNITED STATES of America ex rel. Roger PIERCE, an inmate of the Illinois State Penitentiary, Petitioner-Appellant,**

v.

**Joseph G. CANNON, Warden, Respondent-Appellee.**

**No. 74–1059.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1974.

Decided Dec. 31, 1974.

---

3. See dissenting opinion of Judge Weick in *Bradley, supra,* 484 F.2d p. 261.

John T. Moran, Kenneth N. Flaxman, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen., Charles H. Levad and Thomas Connors, Asst. Attys. Gen., Chicago, Ill., for respondent-appellee.

Before BARNES, Senior Circuit Judge,* and PELL and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The issue in this case is whether testimony concerning an admittedly suggestive pre-indictment lineup should have been excluded from petitioner's state criminal trial.

I

Petitioner Roger Pierce brought this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241–2254. Pierce is presently detained at the Illinois State Penitentiary in Joliet, Illinois as the result of his conviction for attempted robbery of a Chicago taxi driver. This conviction was affirmed by the Illinois Supreme Court. People v. Pierce, 53 Ill.2d 130, 290 N.E.2d 256 (1972). Pierce's subsequent action for a

---

* Senior Circuit Judge Stanley N. Barnes of the United States Court of Appeals for the Ninth Circuit is sitting by designation.

writ was denied by the district court and he appeals.

While driving his cab at 3:00 a. m. on March 20, 1968, James Dotson saw two males standing behind a parked 1963 Pontiac with the hood up. The two men hailed him and believing that they were out of gas Dotson pulled around the corner to meet them. Dotson testified that when he picked up the two men the street lights were on and as they entered the cab the dome light went on automatically. Dotson also testified that he looked at the two men as they entered the cab. They asked to be driven to 63rd and Greenwood.

After driving approximately two blocks, Dotson heard one of the passengers say something. When he turned around he observed that one of the two men was holding a gun, which Dotson grabbed impulsively. After hitting the brakes, causing his cab to crash into a parked vehicle, Dotson flipped into the back seat and a struggle ensued. During the course of the fight both Pierce and the other passenger (Belmore) jumped from the cab. Just as the two men were making demands for Dotson's money a police squad car came around the corner. The two men left Dotson and ran into a gangway with two officers in close pursuit.

John O'Brien, one of the officers in the police squad car, testified that they had been attracted to the area by the sound of automobiles crashing which occurred when Dotson had slammed on the brakes. As he and his partner turned on Langley Avenue they saw three men struggling beside a taxicab. When O'Brien alighted from his car and announced his office Belmore and Pierce ran toward a gangway. Officer O'Brien pursued the two men through the dark gangway to a brightly lit alleyway. He testified that "[w]hen they broke into the alley I was approximately eight to ten feet from them. It was a very brightly lit alley. Roger Pierce was one of the men I saw in the alley." O'Brien apprehended Belmore and recovered a .32 caliber revolver lying on the ground near him. Dotson identified Belmore positively at that time. The other assailant escaped. The case report prepared shortly after the incident by O'Brien from his and Dotson's recollections described the escaped assailant as being 5 feet, 8 inches in height, weighing 170 pounds and wearing a three-quarter length black leather coat.

Detective George Rohrer testified that he was one of the officers who arrested Pierce later that morning. Rohrer's arrest report describes Pierce as being 6 feet tall, weighing 180 pounds and wearing a three-quarter length black leather coat.

Dotson was summoned to the police station following Pierce's arrest. He attended a lineup where at least one other taxi robbery victim, identified as Mr. Parker, was present together with a number of policemen. There was conflicting testimony as to whether the two men actually discussed the lineup prior to making their respective identifications, but the district judge assumed that they were able to do so. Dotson described the lineup as consisting of about six black males. Dotson identified Pierce by kicking him in the seat of his pants and Belmore by touching him with his hands. When asked why he had kicked Pierce, Dotson testified that it was because Pierce had hit him on the head and neck the night before.

Detective Rohrer substantially corroborated Dotson's testimony. He stated that there were six black males of similar appearance, all casually dressed in the lineup. Apparently Pierce was still wearing the same clothes he had on during the attempted robbery a few hours earlier. The six men were brought into the room, asked their name, address and occupation and then told to make a number of turns. Rohrer could not recall any details concerning the age, height or weight of the men in the lineup. No photograph was made of the lineup or its participants and the lineup report which had been prepared could not be produced at trial.

During the hearing on the motion to suppress identification both Pierce and Belmore testified as to the circumstances of the lineup conducted at the police station. Both stated that there were only four men in the lineup and that the other two subjects were dressed in beige or tan trenchcoats and that only they were wearing black leather coats. They maintained they were wearing handcuffs while the others were not. This was disputed by both Dotson who stated that "I don't think any of the men in the lineup had handcuffs on," and Detective Rohrer who stated "[n]one of the men in the lineup were wearing handcuffs."

Both the Illinois Supreme Court and the district court concluded that in some respects the lineup was unduly suggestive. Both courts, however, concluded that a per se exclusion of identification evidence was not necessary and considering the "totality of the circumstances" concluded that there was not a substantial likelihood that Pierce had been misidentified.[1]

## II

Pierce's primary contention is that because certain aspects of his pre-indictment lineup were unnecessarily suggestive, that identification testimony stemming from that lineup was required to be per se excluded. The district court accepted as true the facts as found by the Illinois State Courts.[2] The district judge stated:

> Thus I find . . . the lineup was conducted in the presence of at least two robbery victims who were able to discuss the identification. I also find that only the two suspects, one being the petitioner, were required to wear the distinctive clothing worn by the robbers. . . .[3]

The practice of allowing two identifying witnesses to be present during each other's identification has been severely criticized, because it is "a procedure said to be fraught with dangers of suggestion." United States v. Wade, 388 U.S. 218, 234, 87 S.Ct. 1926, 1936, 18 L.Ed.2d 1149 (1967); Note, Pretrial Identification Procedures—Wade to Gilbert to Stovall: Lower Courts Bobble the Ball, 55 Minn. L.Rev. 779, 795 (1971).[4] Similarly, we disapprove of the fact that both Pierce and Belmore were the only two in the lineup wearing black leather coats, which

---

1. The Illinois Supreme Court opinion deals primarily with the admissibility of the in-court identification, rather than the admissibility of the lineup identification. The court concluded that despite the existence of the improper lineup there was support in the record that the in-court identification had a source independent of the lineup. People v. Pierce, 53 Ill.2d 130, 136, 290 N.E.2d 256, 259 (1972). Since substantially the same test is used both for determining the admissibility of an in-court identification in the wake of a suggestive out-of-court identification as for the out-of-court identification itself, we do have the benefit of the Illinois court's view on the underlying factual issues. In any event we, as did the district court which concluded that testimony concerning the lineup need not be excluded, have before us the state court record and can thus determine if the "totality of the circumstances" rule was properly applied.

2. We have determined in part III infra that there was no need for an evidentiary hearing on this petition before the district judge.

3. The district judge rejected Pierce's contention that he and Belmore were required to wear handcuffs during the lineup.

4. The reason for the criticism is not unjustified.

> Changes in perception occur readily in response to information from social sources. The enormous suggestive power of groups in modifying perceptions, attitudes and norms was first illustrated experimentally by Sherif and then by Asch.
>
> \* \* \* \* \* \*
>
> Both experiments, however, demarcate the potency of group pressure in modifying judgments, despite awareness of a conflict between sensory and social information. While the usual conditions of social suggestion are not always as extreme as those represented by the Sherif and Asch arrangements, clearly some witnesses to identical phenomena may markedly tailor their reports to the majority position. And, in the case of criminal identification, this "tailoring" could occur among witnesses at the scene of the crime, in subsequent communication with or without police knowledge, and at the lineup itself.

Levine & Tapp, The Psychology of Criminal Identification: The Gap from Wade to Kirby, 121 U.Pa.L.Rev. 1079, 1110–11 (1973), [hereinafter Levine].

coats had been an integral part of Dotson's description of his assailants. Requiring suspects to wear distinctive clothing during their participation in a lineup has also been extensively criticized.[5] Finally the fact that no photograph was taken of the lineup participants or the lineup itself and that no written record of the lineup could be produced at trial is not an approved procedure.[6]

These procedures are disapproved for a number of reasons. All decrease unnecessarily the reliability of any identification made. In most situations, the purpose that law enforcement officials seek to accomplish can be achieved without increased burdens or decreased efficiency, while at the same time making any lineup identification more accurate. Thus, given the potential for error caused by group pressure, and the only minimal increased burden created by requiring all identifications to be made separately, there would seem to be no excuse for allowing a procedure which permits two or more witnesses to discuss their identifications. Similarly, with respect to clothing, there is no justifiable reason for not allowing the suspected individual

---

The researchers went on to point out:

Without knowing it, witnesses may alter their beliefs to conform with those of others because of either a lack of confidence in their perceptions or a desire to make contradictory perceptions fit together. As one might expect, the problems of influence and suggestibility are compounded by the fact that subjects are typically unaware of their yielding behavior.

*Id.* at 1114.

**5.** United States v. Wade, 388 U.S. 218, 233, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); United States v. Williams, 152 U.S.App.D.C. 134, 469 F.2d 540, 547 (Bazelon, C. J., concurring in part and dissenting in part), cert. denied, 409 U.S. 872, 93 S.Ct. 203, 34 L.Ed.2d 123 (1972); P. Wall, Eyewitness Identification in Criminal Cases 53–55 (1965); Levine, *supra* note 4 at 1121; Note, Pretrial Identification Procedures—Wade to Gilbert to Stovall: Lower Courts Bobble the Ball, 55 Minn.L.Rev. 779, 810–12 (1971).

A recent proposal by the American Law Institute also suggests that distinctive clothing should not be used at lineups:

Section 160.2. Conduct of Identification Procedures

(1) *Personal Identifications: Line-ups, Confrontations, Unknown Suspects.* The identification of a suspect by having a witness view the suspect shall be from an array of several persons, *a reasonable number of whom are similar in dress* and appearance to the person to be identified.

. . .

ALI, A Model Code of Pre-Arraignment Procedure § 160.2(1) (Tent. Draft No. 6, April 1, 1974) (emphasis added) [hereinafter ALI Code].

**6.** The American Law Institute has proposed:

Section 160.4. Written, Sound and Visual Records of Identification Procedures

(1) *Voice, Photographic and Personal Identifications: General Requirements.* A written record shall be made of any identification procedure conducted pursuant to Section 160.1(1)(a), setting forth in detail the names and addresses of the persons present, the circumstances of the procedure, what took place at the procedure, and a record or reference to any record of any prior identification procedure and of any prior statements by any witness regarding the identification of the person who committed the crime under investigation. The written record shall include any statements made by or to any witness, unless such statements are contained in a sound record of the procedure.

(2) *Identification of Persons in Custody or Pursuant to Order to Appear.* In addition to the written record required by subsection (1), a visual and sound record shall be made of any identification procedure involving hearing the voice of, or viewing a person in custody or present pursuant to an order to appear, except such visual and sound record need not be made where

(a) a confrontation is arranged pursuant to Section 160.2(1)(a) [confrontation promptly after commission of a crime];

(b) counsel is present and consents to such omission; or

(c) the procedure takes place in the presence of a judicial officer.

(3) *Photographic Identifications.* The written record required by subsection (1) shall have appended to it copies of any photographs or other representations viewed by a witness, with an indication of the sequence and circumstances in which they were viewed, or a reference to such photographs or other representation which would permit a reconstruction of the procedure. A [written or sound] [sound] record shall be made of any statements made by or to the witness in the course of the procedure.

ALI Code, *supra* note 5, § 160.4.

to remove highly distinctive clothing or in the alternative to supply similar clothing to others in the lineup. This is especially true in a case where the clothing worn was an integral part of the description given and there exists the likelihood that a misidentification may occur because an identifying witness has his attention focused exclusively on the clothes worn and thereby distracted from other important physical characteristics. Finally, the extra burden on the police by requiring a complete set of lineup photographs is minimal when compared with the certain assurance of fairness that would be accorded defendants if such pictures were readily available to reviewing courts.

If we were formulating rules to be applied by federal courts in federal cases the foregoing considerations might very well compel us to adopt, in the exercise of our supervisory power for the courts in this circuit, the exclusionary rule petitioner suggests. In this case, however, we deal with the adequacy of state lineup procedures and the only question before us is whether the procedures employed violated petitioner's due process rights. The precise extent of those rights in the circumstances of this case can only be delineated by reviewing the relevant cases.

In 1967 the Supreme Court decided three landmark cases dealing with witness-suspect pre-trial confrontations. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In *Stovall* the Court determined that the *Wade* holding of right to counsel at lineups was to be applied only prospectively. The Court did hold however, that if a confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identi-

fication" so as to deny due process of law, this would be a permissible basis for granting a habeas corpus petitioner his requested relief. *Stovall, supra* at 302, 87 S.Ct. at 1972. It went on to say; "[h]owever, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it . . . ." *Id.*[7]

In Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the Supreme Court applied the *Stovall* standard. In that case the petitioner stood out from the other two men by the contrast of his height and by the fact that he was wearing a black leather jacket similar to that worn by the robber. This was followed by a show-up. When neither of these methods produced a definite identification another confrontation was arranged where the petitioner was the only one who had also been in the first lineup. Under these circumstances where the police were in effect telling the witness that "[t]his is the man," the Court concluded that the procedure was so unduly suggestive that it was conducive to mistaken identification.

In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Court held, despite prior unanimous court of appeals' approval to the contrary,[8] that the *Wade* right to counsel would not be extended to pre-indictment lineups. The Court said:

> When a person has not been formally charged with a criminal offense. *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime.

*Id.* at 691, 92 S.Ct. at 1883.

Finally in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972),

---

7. The phrase "totality of the circumstances" was used in *Stovall* in connection with the fact that the identifying witness was lying critically ill in a hospital and that the showup confrontation was imperative. The phrase

has since *Stovall* acquired a more expansive meaning. *See* discussion of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and note 11 *infra*.

8. 406 U.S. at 705 n.14, 92 S.Ct. 1877.

where the petitioner challenged a show-up that took place seven months after the crime, the Court said:

> [T]hat the primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. [377], at 384 [88 S.Ct. 967, 19 L.Ed.2d 1247]. While the phrase was coined as a standard of determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of "irreparable" it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself.

*Id.* at 198, 93 S.Ct. at 381.

The Court applied the "totality of the circumstances" test to determine if "the [showup] identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199, 93 S.Ct. at 382. The Court then set out the so-called *Biggers*' factors:

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 199–200, 93 S.Ct. at 382.

■ Pierce contends that the "totality of the circumstances" rule of *Stovall* and *Biggers* is not the appropriate one to be applied in this case. Instead he argues for a per se exclusionary rule of identification testimony if a lineup is unduly suggestive. He asserts that even if *Biggers* sets the appropriate standard for

showup cases, it should not be applied to lineup cases. According to Pierce's theory a lineup is presented to a jury as a "laboratory experiment," the results of which are generally more persuasive to a jury than the results of a showup, the inadequacies of which jurors can recognize for themselves. Pierce concludes that since this is presented as experimental laboratory evidence, that any undue suggestion is more prejudicial than a showup and therefore an exclusionary rule should be applied.

■ The argument is not persuasive. Counsel for defendants are not precluded from bringing to a jury's attention, either through testimony of the accused or others, any inadequacy in a lineup procedure. While it is to be hoped that both lineups and showups will be conducted in fair and impartial manners, it is the showup that is inherently more suggestive.[9] This being so there is no justification for applying a more stringent standard to lineup confrontations than the Supreme Court has chosen to apply to showup confrontations. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).[10]

■ Pierce also argues that the *Stovall* "totality of the circumstances" test applies only to pre-*Stovall* confrontations and that the Supreme Court in *Biggers* specifically reserved the question of whether an exclusionary rule would be applied to unnecessarily suggestive post-*Stovall* lineups when it said:

> The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter the police from using a less reliable procedure where a more reliable one may be available, and would not be based on the assumption that in every instance the admission of evidence of such a

**9.** Neil v. Biggers, 409 U.S. 188, 199 n.6, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Grano, Kirby, Biggers and Ash: Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent? 72 Mich.L.Rev. 717, 782 (1974); ALI Code, *supra* note 5, § 160.2.

**10.** There is no indication that other federal courts have considered applying a different test to lineup cases than to showup cases. *See, e. g.,* Baker v. Hocker, 496 F.2d 615 (9th Cir. 1974); United States ex rel. Cannon v. Montanye, 486 F.2d 263 (2d Cir. 1973), cert. denied, 416 U.S. 962, 94 S.Ct. 1982, **40** L.Ed.2d 313 (1974).

confrontation offends due process. [citations omitted]. Such a rule would have no place in the present case, since both the confrontation and the trial preceded Stovall v. Denno, *supra*, when we first gave notice that the suggestiveness of confrontation procedures was anything other than a matter to be argued to the jury.

*Biggers, supra*, 409 U.S. at 199, 93 S.Ct. at 382.

The above statement does not imply that the Supreme Court would apply a strict exclusionary rule to all post-*Stovall* lineups that were in any way suggestive. At the very least Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), suggests that in pre-indictment post-*Stovall* cases, as both *Kirby* and this case are, the *Stovall* "totality of the circumstances" standard strikes the appropriate balance. *Id.* at 691, 92 S.Ct. 1877. In any event, a number of court of appeals cases involving pre-trial witness-suspect confrontations which occurred after *Stovall* and decided after *Biggers* have failed to abandon the "totality of the circumstances" standard.[11]

Applying the *Biggers* delineation of the "totality of the circumstances" test to the facts of this case, we conclude

that the district court's denial of the petition for a writ of habeas corpus should be affirmed.

■ In this case Dotson had ample opportunity to view Pierce. He saw him and Belmore standing by the side of their parked car. At the time they hailed Dotson's cab the street lights were on, and when they entered the cab the dome light went on. Dotson viewed the men as they entered the cab. He viewed Pierce in the cab just prior to and during the course of the struggle and when Pierce and Belmore were outside the cab making demands for Dotson's money at which time the rear compartment door was open, which turned on the light of the cab.

In addition to having a sufficient opportunity to carefully observe a suspect, the *Biggers* test involves a number of other factors. The description of the escaped assailant by Dotson and Detective O'Brien, who in court also identified Pierce, was accurate in almost all respects. In addition Dotson demonstrated a high level of certainty at the lineup by his method of selecting Pierce as one of his assailants. Finally, the lineup took place the morning following the attempted robbery and the length of time

11.  United States v. Roby, 499 F.2d 151 (10th Cir. 1974); Baker v. Hocker, 496 F.2d 615 (9th Cir. 1974); Haberstroh v. Montanye, 493 F.2d 483 (2d Cir. 1974); United States v. Casscles, 489 F.2d 20 (2d Cir. 1973); United States ex rel. Cannon v. Montanye, 486 F.2d 263 (2d Cir. 1973), cert. denied, 416 U.S. 962, 94 S.Ct 1982, 40 L.Ed.2d 313 (1974); Stanley v. Cox, 486 F.2d 48 (4th Cir.), cert. denied, 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309 (1973); United States v. Evans, 484 F.2d 1178 (2d Cir. 1973); Hastings v. Cardwell, 480 F.2d 1202 (6th Cir. 1973), cert. denied, 415 U.S. 923, 94 S.Ct. 1425, 39 L.Ed.2d 478 (1974); United States v. Hurt, 155 U.S.App.D.C. 217, 476 F.2d 1164 (1973).

As some of the above cases indicate the "totality of the circumstances" test which began with a narrow application in *Stovall, see* note 7, *supra*, has now been expanded to encompass the *Biggers'* factors test. *Roby, supra; Baker, supra; Haberstroh, supra.* But see Smith v. Coiner, 473 F.2d 877 (4th Cir.), cert. denied, 414 U.S. 1115, 94 S.Ct. 848, 38 L.Ed.2d 743 (1973). *Smith* assumes that in pre-*Stovall* cases the standard to be used is

the "likelihood of misidentification" as judged by the *Biggers'* factors, and that this test is distinct from the *Stovall* test—whether in the totality of the circumstances a confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification—which *Smith* says is applicable to post-*Stovall* cases. The *Smith* court would limit the totality of the circumstances test to the types of external factors present in *Stovall* and not incorporate within its bounds the *Biggers'* factors test. As pointed out the *Biggers'* factors have not been applied so narrowly by other courts. In addition the same court that decided *Smith* subsequently applied the *Biggers'* factors in a post-*Stovall* case. Stanley v. Cox, 486 F.2d 48 (4th Cir.), cert. denied, 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309 (1973). Finally *Biggers* itself makes clear that the factors it delineates are in connection with the question of "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers, supra*, 409 U.S. at 199, 93 S.Ct. at 382.

between the crime and the confrontation is another of the factors. Because of all these considerations, there was little if any likelihood of a mistaken identitfication induced by a suggestive lineup.

### III

 Petitioner's final contention is that the district judge erred in not granting his request for an evidentiary hearing on his habeas corpus petition. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), sets the standard for when an evidentiary hearing is necessary:

> We hold that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend, supra* at 313, 83 S.Ct. at 757.

We have before us, as did the district judge and the Illinois Supreme Court, the record of proceedings in the trial court. The Circuit Court of Cook County held a hearing on petitioner's motion to suppress identification testimony. At the conclusion of the hearing the judge concluded that "the lineup procedure followed in this case was not unnecessarily suggestive and conducive to irreparable mistaken identification [so] as to deny this defendant due process of law." Thus, since the trial judge applied, as we have determined, an appropriate standard in considering whether to allow into evidence identification testimony, it is clear that he resolved in favor of the state any factual issues. *Townsend, supra*, at 314, 83 S.Ct. 745. In addition,

from our review of the record we are satisfied that the factual conclusions of the trial court are adequately supported. Finally, there are no allegations that the fact-finding procedures employed by the state court were inadequate to develop fully the facts or that substantial new evidence has been found. This being so we conclude, as did the district court, that an evidentiary hearing was not necessary.

For all the foregoing reasons the judgment of the district court is affirmed.