**UNITED STATES of America ex rel. Salvador ORTIZ, Petitioner,**

v.

**Allyn SIELAFF, Director, Illinois Department of Corrections, Respondent.**

**No. 75 C 301.**

United States District Court, N. D. Illinois, E. D.

Oct. 1, 1975.

Thomas F. Geraghty, Mark K. Schoenfield, Northwestern Legal Assistance Clinic, Chicago, Ill., for petitioner.

William J. Scott, Atty. Gen., Melbourne A. Noel, Jr., Anne Taylor, Asst. Attys. Gen., Chicago, Ill., for respondent.

## MEMORANDUM DECISION

MARSHALL, District Judge.

By his habeas corpus petition Salvador Ortiz collaterally attacks his conviction for armed robbery after a bench trial in the Criminal Division of the Circuit Court of Cook County, Illinois. Jurisdiction exists under 28 U.S.C. § 2254 (1970). Petitioner contends that his conviction is constitutionally invalid because identification procedures used by the State were contrary to due process of law and because he lacked effective assistance of counsel. Petitioner has exhausted his state court remedies by unsuccessfully appealing both his conviction and the trial court's dismissal of his post-conviction petition. *People v. Ortiz*, 22 Ill.App.3d 788, 317 N.E.2d 763 (1st Dist. 1974). The parties here stipulated that an evidentiary hearing would not produce any relevant facts not presented in the state court record. The parties have fully briefed the issues and the case is ready for decision on the merits.

The following are facts relevant to petitioner's first contention, that the identification procedures violated the due process clause of the Fourteenth Amendment. About 7:00 a. m. on April 5, 1970, Mrs. Ruth Long was robbed on a Chicago street. Visibility was good. The robber walked towards her and tried to snatch her purse. In the ensuing struggle, he knocked her to the ground and kicked her. She saw him face to face during part of the attack. The incident lasted for about 1½ minutes and then the robber fled. Afterwards, Mrs. Long crawled about one block to her home and her husband promptly called the police.

The initial police report, dated April 5, 1970, reflects Mrs. Long's first description of the robber. According to her, he was a 25-year-old white male with a dark complexion. He was 5'6" tall, weighed 150 pounds and wore a brown jacket and brown gloves. Ortiz is actually 5'9" tall and weighs 170 pounds. No evidence corroborated the description of his clothing. In other respects, Mrs. Long's report accurately described Ortiz.

On April 7 and April 10, Mrs. Long scanned about 500 photos at the police station. She tentatively identified a snapshot of Ortiz as the man who robbed her, and asked to see a later picture of the same man. On April 18, a police officer showed her a group of 15 pictures, including a recent photograph of Ortiz with a beard. Mrs. Long positively identified Ortiz, but noted that he was clean-shaven at the time of the robbery. Ortiz has not alleged that the photographic identification was suggestive. At that time, there were no other investigative leads.

On April 28, the police constructed a five-man line-up, which was photographed and made part of the record. The photograph shows that Ortiz was the only man not wearing a white shirt and tie. Ortiz is also distinguished from the other men because he alone had mussed hair. Finally, the background of the picture subtly singled out Ortiz. He was standing squarely in front of a section of lockers without built-in clothes racks, and the others stood in front of the clothes racks. None of the men wore glasses. Mrs. Long identified Ortiz at the line-up.

At trial, Mrs. Long testified that Ortiz was the man who snatched her purse. She said that on April 5 she saw him face to face in the bright morning light. On cross-examination, she testified, "I am positive this is the man . . . I wouldn't want to convict . . . an

innocent person." She said that the robber was not wearing glasses. Mrs. Long gave the only eyewitness identification testimony although a police report notes that a newspaper boy saw the robber as he ran away.

Ortiz testified at trial in his own defense. He denied committing the robbery and offered an alibi which four members of his family corroborated. All of the alibi witnesses testified that in the early morning of April 5 Ortiz was sleeping at his father's apartment which was a considerable distance from the place where Mrs. Long was attacked. One of the alibi witnesses also said that Ortiz had been living with his girl friend, Mae Molina, in April of 1970. Ms. Molina had been living near the scene of the offense, but moved sometime in the first months of 1970. It was not clear from the testimony whether she moved before or after April 5.

Ortiz alleges that these circumstances indicate that the identification procedure tainted his trial. He contends that Mrs. Long's initial identification was too uncertain and inaccurate to be valid. He claims that the line-up was overly suggestive, so that all subsequent identifications were defective. Ortiz presented this argument on direct appeal, but the Illinois Appellate Court found an independent foundation for Mrs. Long's in-court identification and refused to consider the propriety of the line-up.

■ The line-up was suggestive due to the difference in dress between Ortiz and the other four men. This difference adversely prejudiced Ortiz because his clothes were more informal and less respectable than those of the other four men. As the Seventh Circuit noted in *United States ex rel. Pierce v. Cannon,* 508 F.2d 197 (7th Cir. 1974), "with respect to clothing, there is no justifiable reason for not allowing the suspected individual to remove highly distinctive clothing or in the alternative, to supply similar clothing to others in the lineup." *Id.* at 201–02. The American Law Institute also recommends that all partici-

pants in a line-up should be similarly dressed. *See,* ALI, A Model Code of Pre-Arraignment Procedure, § 160.2(1) (Proposed Official Draft, April 15, 1975).

Despite the implicative line-up, the identification is valid if the totality of the circumstances points to its reliability. In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court set forth five factors to be considered in evaluating the likelihood of misidentification: the opportunity of the witness to see the offender when the offense occurred; the witness's degree of attention; the length of time between the crime and the confrontation; the degree of certainty of the identification; and the accuracy of the description. The Court promulgated these tests in the context of a suggestive show-up, and the Seventh Circuit has applied them in a line-up case. *United States ex rel. Pierce v. Cannon, supra.*

■ Three caveats are in order. First, the tests should focus mainly on the circumstances preceding the line-up because subsequent identifications are colored by it. Second, the *Biggers* tests necessitate close scrutiny of the facts of this case. References to other cases cited by the parties, which apply the *Biggers* tests, are less useful. Third, some of the state appellate court's findings of fact are relevant to the *Biggers* tests. Under the habeas statute, 28 U.S.C. § 2254(d) (1970), these findings must be presumed correct.

■ The first two factors in the *Biggers* tests, the witness's chance to see the offender, the witness's level of attention are satisfied in this case. The appellate court found that Mrs. Long's opportunity to see the robber was "excellent" because the day was bright, her view was unobstructed, and she was looking at him steadily. Ortiz's suggestion that Mrs. Long's view was impaired because the crime was violent in unconvincing. Clearly, she could observe the robber before the attack and during part of it. In addition, Mrs. Long was a fully con-

scious victim and not a disinterested witness. Thus, she was motivated to pay close attention.

The third factor in the *Biggers* test is the delay between the crime and the identification. This factor decidedly militates against Ortiz. Mrs. Long made her first identification which was of Ortiz's photograph, only five days after the robbery. The line-up took place 3 weeks later and Ortiz was tried 7 months after the offense.

The fourth factor is the certainty of the witness at the confrontations. The appellate court found, and we agree, that Mrs. Long's photographic identification was not weak or vague. She did express initial uncertainty, but the available pictures of Ortiz were not fully accurate. One picture was several years old and the other showed him with a beard. Under these circumstances, her incipient doubt was reasonable.

The final factor is the accuracy of the description. The appellate court found that Mrs. Long's description was "adequate" but based its holding, that Ortiz was proved guilty beyond a reasonable doubt, on other grounds. Mrs. Long was somewhat incorrect on height and weight, but she appraised the age, race and complexion type precisely. No evidence corroborated her description of the robber's clothes. Ortiz cites several inconsistencies between Mrs. Long's reports to the police and her testimony at trial in support of his argument that her memory of the incident is generally poor. These inconsistencies are minor and do not refer to her description of him. Although Mrs. Long's description is not as thorough or precise as might be hoped, any infirmities in the description are more than counterbalanced by the strength of the other four factors.

In conclusion, the evaluation of the *Biggers* factors shows that there was little likelihood of misidentification under the totality of circumstances. Thus, the identification procedure did not deprive Ortiz of due process of law.

Ortiz's second contention is that he was denied the right to effective assistance of counsel secured by the Sixth and Fourteenth Amendments. More specifically, he claims that his trial lawyer, Bernard Bradley, performed below the minimum level of professional competence. *United States of America ex rel. Williams v. Twomey,* 510 F.2d 634 (7th Cir. 1975). *See, also, Beasley v. United States,* 491 F.2d 687 (6th Cir. 1974); *West v. Louisiana,* 478 F.2d 1026 (5th Cir. 1973) and *Bruce v. United States,* 126 U.S.App.D.C. 336, 379 F.2d 113 (1967), adopting the minimum level of professional competence test and rejecting the former farce or mockery test.

To evaluate this contention, three questions must be answered. First, the specific duty which Bradley owed his client must be defined. Second, whether Bradley fulfilled that duty must be decided. If he did not, it is necessary to determine whether this failure actually prejudiced Ortiz.

No statute defines the specific duties which a lawyer owes his client to fulfil his duty of providing adequate assistance of counsel. In *United States v. De Coster,* 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973), the court adopted *The Standards for the Defense Function* (app. Draft 1971) from the ABA Project on Standards for Criminal Justice, as guidelines to define these duties. These standards provide in part that counsel should conduct appropriate investigations, including at least interviewing all defense witnesses, so that all available defenses will be raised. The standards are useful here as guidelines.

■ Ortiz claims that Bradley rendered ineffective assistance because he failed adequately to prepare the case. This failure would violate the ABA standards. Specifically, Ortiz claims that Bradley did not interview or prepare the alibi witnesses adequately. Bradley interviewed the witnesses in a group for three minutes immediately before trial, although he had been aware

of Ortiz's alibi defense for several months.

It is axiomatic that a lawyer does not allow witnesses to testify with so little preparation. When, as here, the witnesses speak and understand English imperfectly, the lawyer has an even greater responsibility to prepare them. And Bradley spoke Spanish, the witnesses' native language, fluently.

The second instance of inadequate preparation was Bradley's failure to investigate the fact that Ortiz usually wore glasses. Ortiz's optometrist and five witnesses submitted affidavits that Ortiz usually wore glasses on the street. Mrs. Long said that the robber was not wearing glasses. At the line-up Ortiz was not wearing glasses.

■ The final alleged omission in preparing the case was Bradley's failure to obtain and seek to have suppressed statements Ortiz made when the Fifth Amendment warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were incomplete. Ortiz did not fully confess, but he did admit he was in the area of the robbery when it occurred. That admission was used to impeach him at the trial. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), holds that it is not error to admit such statements into evidence for the purpose of impeaching the defendant's credibility.

In addition, Bradley failed to press all of Ortiz's defenses at trial because he decided to forego a motion to suppress the identification.

■ Ortiz also alleges that Bradley's subsequent disbarment for accepting fees without providing services is relevant to the issue of effective assistance of counsel. Only the circumstances surrounding Bradley's performance at this trial, however, are relevant. In cases in which a court has considered disbarment, it was in connection with the particular petitioner's defense, or it was dicta. *See United States v. Butler*, 164

U.S.App.D.C. 151, 504 F.2d 220 (1974); *United States ex rel. Hall v. Ragen*, 60 F.Supp. 820 (N.D.Ill.1945).

Thus, Ortiz has demonstrated that Bradley's work fell below the minimum level of professional competence, at least in respect to the preparation of the alibi witnesses. The remaining issue is whether this failure prejudiced Ortiz enough to deprive him of a fair trial. Both parties have assumed that Ortiz has the burden of proving this prejudice according to *McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974). This allocation of the burden is reasonable here because Ortiz has the greatest access to the proof of prejudice in this case. Different counsel have represented Ortiz on appeal and in his habeas petition. These lawyers have well researched the shortcomings of the trial lawyer, and the record contains affidavits of all witnesses and one potential witness that Bradley did not prepare or interview them adequately.

Had all Bradley's errors been rectified, Mrs. Long's eyewitness identification would still stand. Her testimony alone was sufficient to convict Ortiz. It is true that Bradley failed to press a motion to suppress the identification, but Mrs. Long's pre-line-up identification of Ortiz was not in any way suspect and probably would not have been suppressed. The defense that Ortiz could not have been the robber because he usually wore glasses is simply too flimsy to overcome the strong identification.

The errors with respect to the alibi defense likewise did not prejudice Ortiz enough to deprive him of a fair trial. All of the alibi witnesses did support the claim that Ortiz was in his father's home at the time of the robbery. Although their answers at times were not perfectly responsive to the line of questioning, their testimony as a whole was clear and consistent enough. There is no showing that their testimony would have been substantially different had Bradley prepared them more adequately. Thus, Ortiz has failed to carry his bur-

den of showing that the errors of his trial counsel prejudiced his defense.

In conclusion, it is apparent from the record that Ortiz was not deprived of a fair trial. The identification procedure was reliable and the mistakes of trial counsel did not prejudice his defense. The application for a writ of habeas corpus is dismissed.